**FILED**

APR 0 9 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN THE MATTER OF THE SEARCH OF )
)
A SANYO CELLULAR TELEPHONE, )   CASE NUMBER 12-mj-3076-DGW
MODEL SCP-3820, BEARING SERIAL )
NUMBER 268435457811475687, WITH )
CELLULAR TELEPHONE NUMBER )   **FILED UNDER SEAL**
618-203-6090 )
)

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

I, Andrew Leach, being duly sworn and deposed state:

I am a Special Federal Officer with the Federal Bureau of Investigation (FBI) sponsored

Metro-East Cyber Crimes and Analysis Task Force, and I have reason to believe that stored

within the following:

**A SANYO CELLULAR TELEPHONE, MODEL SCP-3820, BEARING
SERIAL NUMBER 268435457811475687, WITH CELLULAR
TELEPHONE NUMBER 618-203-6090,**

which is in the possession of the Federal Bureau of Investigations' Fairview Heights Office,

which is within the Southern District of Illinois, there is now concealed certain electronic data

files, namely:

### SEE ATTACHED LIST, ENTITLED "ATTACHMENT A,"

which constitutes evidence of the commission of a criminal offense or which is contraband, the

fruits of crime, or things otherwise criminally possessed, or which is designed or intended for

use or which is or has been used as the means of committing an offense in violation of Title 18,

United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b). The facts to support the

issuance of this Search Warrant are as follows:

### AFFIDAVIT

I, Andrew Leach, being first duly sworn state:

## Introduction

1.     I am a Special Federal Officer of the Metro-East Cyber Crimes and Analysis Task Force (MCCA). MCCA is an FBI sponsored Task Force assembled to combat a variety of cyber-related crime in the Metro-East area. MCCA is comprised of law enforcement personnel from approximately 15 different local, state, and federal agencies. I work with other members of MCCA at the FBI's office in Fairview Heights, Illinois. I have worked on cyber investigations on the MCCA since January, 2011. I have been a law enforcement officer in the state of Illinois since 2002. I am an Investigator at the St. Clair County Sheriff's Department. During this time I have conducted and assisted in the investigation of state and federal offenses, including sex offenses, internet crimes against children, financial crimes and homicides. Since January 2001, I have investigated matters involving the online exploitation of children, particularly regarding the possession, receipt, and transmission of images of child pornography. I have gained experience in the conduct of such investigations through training seminars, classes, and work with other federal cyber-crime investigators. Specifically, I have received training and direction from other agents of the MCCA regarding habits of child pornography collectors/distributors, as well as investigation crimes involving the online exploitation of children in general. I have been trained in the use of techniques used to extract computer data, as well as data from cellular telephones, to include conducting a forensic preview of a computer during a search of an individual's residence. I have worked on approximately ten cases involving the online exploitation of children, three of them as lead case agent, and the remainder as co-case agent.

2.     I am currently investigating the activities of Jack C. Baldwin, Jr., 513 East McKinley, Belleville, IL 62220. My investigation began as a report received from the Royalton Police Department regarding the suspect's commission of the offense of predatory criminal sexual assault of a child, in violation of Illinois law. The suspect, Jack C. Baldwin, Jr., is also suspected of producing, possessing and receiving child pornography, transferring obscene matter to a minor, and/or enticement of a minor.

2

3. I make this affidavit in support of a warrant to search a Sanyo Cellular Telephone, Model SCP-3820, bearing serial number 268435457811475687, with cellular telephone number 618-203-6090, which belongs to the suspect Jack C. Baldwin, Jr.

4. This affidavit seeks to search for and to seize contraband, evidence or instrumentalities of violations of Title 18, United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b).

5. The statements in this affidavit are based upon my training and experiences as a Special Federal Officer of the Federal Bureau of Investigation and as an Investigator with the St. Clair County Sheriff's Department, information provided to me by other law enforcement officers and investigators, and upon consultation with personnel trained in the investigation, seizure, and analysis of computers, electronic data, and electronic media. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b), exists on the item known as a Sanyo Cellular Telephone, Model SCP-3820, bearing serial number 268435457811475687, with cellular telephone number 618-203-6090, hereinafter SUBJECT CELL PHONE.

### Search of the Subject Cellular Telephone

6. Based on my training and experience and consultation with other law enforcement officers experienced in investigations regarding the exploitation of children and the forensic examination of digital media, I have learned the following:

    a. It is commonly known that individuals who have a sexual interest in children will send digital images of children engaged in sexual activity and/or nude images of the individual's genitalia, to the children they are trying to seduce in order to groom them. It is also commonly known that individuals who have a sexual interest in children to request the

3

children they are sexually interested in to send them digital images of themselves engaged in sexual activity to view at their pleasure.

b. I know that cellular telephones tend to contain evidence of evidentiary value in these types of cases because individuals use cellular telephones as, *inter alia*, portable computers, photo albums, address books, to send and receive e-mail, to send and receive texts, to send and retrieve digital images, and to access web pages. I know that cellular telephones typically contain files that demonstrate who has dominion and control over that cellular telephone.

c. I know that some cellular telephones store voice mail messages, names, telephone numbers, addresses, sent and received text messages, and images on their digital memory, rather than the items being saved on the cellular telephone's service provider's server. The SUBJECT CELL PHONE stores these items in its digital memory.

i. Searching digital media is a highly technical process which requires specific expertise and specialized equipment. There are so many types of digital media in use today that it is impossible to bring to the search all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with personnel who have specific expertise in the type of digital media that is being searched.

ii. Searching digital media requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compress, encrypted, or password-protected data. Since such data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential in conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

iii. Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a

4

digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of items sought by this application. Additionally, since computer drives may store artifacts from the installation of software that are no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timeliness of usage, confirming the identification of certain users, establishing a point of reference for usage, and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

7.     In searching for evidence, fruits, and instrumentalities of criminal activity within the SUBJECT CELL PHONE, as set forth herein and in Exhibit A to this affidavit, the Government will employ the following procedures:

a.     The SUBJECT CELL PHONE will be transported to an appropriate law enforcement laboratory for review to determine whether the contents of the SUBJECT CELL PHONE contain evidence and/or instrumentalities of violations of federal law. The SUBJECT CELL PHONE and the contents thereof will be reviewed by appropriately trained personnel in order to extract and seize any data that relates to the fruits, instrumentalities, and evidence in violation of Title 18, United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b) (transfer of obscene matter to a minor, production, receipt and/or possession of child pornography and enticement of a minor).

b.     If searching authorities determine that none of the data contained on the SUBJECT CELL PHONE falls within any of the items seized pursuant to the warrant, law enforcement personnel will return the SUBJECT CELL PHONE within a reasonable period of

time, unless further authorization is obtained from the Court.

## Child Pornography Collector Characteristics

8. Based upon my training and experience investigating child exploitation cases, and consultation with other law enforcement officers experienced in investigations regarding the exploitation of children, I am aware that child pornography distributors/collectors:

    a. Receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (in person, in photographs, or other visual media).

    b. Collect sexually explicit or suggestive materials in a variety of media that they use for their own sexual arousal and gratification.

    c. Almost always possess and maintain their material in the privacy and security of their homes or some other secure location. Child pornography distributors/collectors typically retain their material for many years, and store their child pornography among otherwise legal media or files.

9. In reference to a cellular phone, I know that it is possible to retrieve images, video and other stored information from a cellular phone with specialized equipment. I also know, based on my conversations with computer forensic examiners, it varies as to the ability to retrieve deleted images and videos from a cellular phone and thus the preservation of data is important having been unable to retrieve deleted data in previous investigations

## Background of Investigation

10. On December 17, 2011, K████ J████ the mother of the 11 year old victim, identified herein as E.M., contacted the ██████, Illinois, Police Department, and reported that E.M. received a pornographic picture from suspect Jack C. Baldwin, Jr., a 46 year old man, on E.M.'s cellular phone. J████ told the officers that E.M. had also sent nude photographs of her genitalia to Baldwin. J████ told the officers that she discovered this information when she saw a text message from Baldwin on E.M.'s cell phone telling her to delete the photograph that he sent

6

E.M. (later determined to be a nude picture of his erect penis). J▓ said that when she confronted E.M. about the text, E.M. would not discuss it with her, but that E.M. later provided the information about the text messages and photographs to J▓ mother, ▓ E.M. told ▓ that she sent the nude picture of herself to Baldwin so he would "shut up and leave her alone about it."

11. J▓ reported that E.M. also disclosed that Baldwin had touched her vagina. E.M. told Rushing that Baldwin told E.M. that he wanted E.M. to visit him some weekend so they "can do it." When prompted further, E.M. spelled out s-e-x. E.M. said that she did not tell anyone about Baldwin touching her because E.M. did not want to get him in trouble. E.M. also said that she was scared that she would go to jail because she sent Baldwin the nude picture of herself. Finally, E.M. said that Baldwin would call and text her while J▓ was at work. Both J▓ and E.M. identified Baldwin's cellular phone number as 618-203-6090.

12. J▓ was friends with Baldwin, and she and E.M., and sometimes J▓ older son, would often visit him at his residence in Belleville, Illinois. J▓ told the officers that Baldwin was "like a godfather" to E.M.

13. E.M. was interviewed, and reported that on or about December 12 or December 14, 2011, Baldwin sent her a nude picture of himself to her cellular phone, and that he later sent her a text telling her to delete the photograph. E.M. said that Baldwin then persuaded her to send him a text containing a nude picture of herself. E.M. also reported that Baldwin had touched her vagina on at least two occasions while she and Jarvis were visiting Baldwin in Belleville, Illinois. E.M. said the pictures were sent to, and received from, the SUBJECT CELL PHONE.

14. On January 10, 2012, Detective Karl Kraft of the Belleville Police Department was contacted by an Illinois State Police Trooper regarding the allegations J▓ reported to the ▓ Police Department. The matter was referred to the Belleville Police Department because the alleged sexual assault(s) of E.M. occurred at Baldwin's residence in Belleville, Illinois, within the Southern District of Illinois.

7

15.    On January 17, 2012, E.M. was interviewed on videotape at the Child Advocacy Center (CAC) in Belleville by a trained child interview specialist. E.M. stated that she had known Baldwin all of her life, and that he would talk to her about "what parents do in bed and stuff." She said that Baldwin told her that he wanted her to come to his house so they could do "all that stuff." When prompted further, E.M. wrote out s-e-x. E.M. said that Baldwin sent her a picture of his penis while going to the bathroom, and told her to delete the picture, which she did. E.M. said that Baldwin asked her for pictures of "between your legs," so she sent a nude photograph of her vagina to the SUBJECT CELL PHONE. E.M. also discussed the sexual assaults.

16.    During the interview, E.M. said that Baldwin told her that he wanted her to be "in his parade of naked girls." E.M. said that a girl, who she later identified as ████ told her that ████ saw pictures of a "ton of naked girls" on the defendant's laptop (the defendant later destroyed the laptop sometime prior to his arrest). E.M. said that Baldwin told her that he wanted her to be "the next one," and that he wanted to touch her with her clothes off. E.M. said that Baldwin called her and told her that he would like to see her naked. E.M. reiterated that Baldwin sent the nude pictures of his penis from the SUBJECT CELL PHONE before she sent him the nude picture of her vagina and the pictures of her in her underwear.

17.    K███ J███ was interviewed at the police department after the CAC interview ended. She said that called Baldwin and confronted him about sending E.M. the pictures of his penis and having the victim send him nude pictures of her vagina using their cellular phones. Baldwin told J███ that he might have accidentally sent the picture of his penis to E.M. He also admitted receiving some nude pictures of E.M., but told J███ he did not know why he got the pictures. J███ warned Baldwin that she planned to contact the police regarding the picture.

18. A state search warrant was obtained for Sprint, the carrier of the SUBJECT CELL PHONE that Baldwin used to send and receive nude photographs. Officers recovered two nude pictures of an erect penis, a picture of a nude vagina (believed to belong to E.M.), and pictures of

8

E.M. in her underwear. The pictures were sent by Multimedia message. The pictures were later shown to E.M. and she positively identified the photographs as the ones that were sent to her, as well as the ones she sent to Baldwin. E.M. said that she sent him the pictures of herself because he kept "bugging her" to send him a picture of her "private parts," so she did to make him "shut up." Baldwin told E.M. that he was going to take the pictures that she sent him, send them to his camera, and then eventually put it on his laptop.

19. On January 29, 2012, Baldwin, who was arrested at his home that day and taken to the Belleville Police Department, provided a voluntary, videotaped statement after waiving his *Miranda* rights. During the interview, Baldwin said that E.M. was the 11 year old daughter of J███ and that he had known E.M. her entire life. Baldwin stated that he must have accidentally sent the two pictures of his nude penis to E.M. rather than to J███ He also admitted that E.M. sent two pictures to the SUBJECT CELL PHONE, one of her nude and one of her wearing underwear. He said that E.M. sent him the pictures because she had told him "sexual things." Baldwin said that he deleted the pictures of E.M. from the SUBJECT CELL PHONE, and that he did not send them to his laptop computer. He said that he might have sent E.M. a text message using the SUBJECT CELL PHONE telling her that the picture of her naked vagina was "cute." Baldwin identified the same pictures shown to E.M. as the pictures that were sent by him and that he received from the victim via the SUBJECT CELL PHONE. He said that he told E.M. that it would be kind of cute to see her vagina, and then she sent the picture of her nude vagina. Baldwin told the officers that he thought the picture of E.M.'s vagina was cute, but that it would have been a little more enticing if she had opened her legs wider. Baldwin said that he knew what he did was not right, and that he never meant to hurt E.M. He denied sending naked pictures to any children besides E.M.

20. Baldwin said that he sent the pictures of his nude penis to E.M. at her request. He said that he told E.M. to delete the pictures because he did not want J███ to see them because J███ "freaks out" about everything. Baldwin denied ever touching E.M., although he did admit

9

that he would sometimes be turned on a little bit when she sat in his lap. He also told the officers that he thought he might have sex with E.M. in the future, and that he may have possibly told that to E.M. Finally, Baldwin said that he may have sent the pictures from the SUBJECT CELL PHONE to his Yahoo! and Google! e-mail accounts.

21. Baldwin also told the officers that he did not have any child pornography on his laptop computer, but that he did have "a half of dozen" of naked teenagers on the computer. He said that he is into looking at naked girls that have just hit puberty, which he said was usually in the age range of 10 to 14 when the girls start getting some hair on their vagina (E.M. was 11 when he asked her to send him naked pictures of her). He also admitted looking at pictures of girls as young as 5 years of age. Baldwin said that he did not know that it was illegal to look at naked pictures of young girls, and that he would get naked pictures of young girls from the website "Usenet."

22. During the interview, Baldwin gave officers consent to retrieve and search the laptop computer that was still at his residence. Baldwin told the officers that the laptop computer broke, and that he destroyed it by punching holes in the laptop's hard drive. Officers retrieved the laptop computer from his wife, and noted that the hard drive had been destroyed.

23. When Baldwin was arrested at his residence on January 29, 2012, he had the SUBJECT CELL PHONE on his person. The phone was recovered during a search incident to arrest, and originally placed into evidence, along with the laptop computer, at the Belleville Police Department.

24. Detective Kraft with the Belleville Police Department contacted me because he knew that I was a task force officer with FBI Cyber Crime Task Force which assists in investigations of this nature. Your affiant took possession of the SUBJECT CELLULAR TELEPHONE, as well as other items of evidence, on March 5, 2012, from the Belleville Police Department. The SUBJECT CELLULAR TELEPHONE is in a secure location in the FBI's Fairview Heights Office. Your affiant began a federal investigation into the allegations that a

10

Case 3:12-mj-03076-DGW *SEALED* Document 3 Filed 04/09/12 Page 11 of 13 Page ID
#13

cellular telephone, a facility of interstate commerce, was used to produce, receive and possess child pornography, to transfer obscene matter to a minor, and to entice E.M. into engaging in sexually explicit conduct for the purpose of receiving a picture of the minor engaged in that sexually explicit conduct, in addition to the state investigation into the victim's allegations of sexual assault.

25. Your affiant, based on my training and experience investigating online child exploitation cases, and consultation with other law enforcement officers experienced in investigations regarding the exploitation of children, knows that individuals who collect child pornography rarely, if ever, dispose of their sexually explicit material. Child pornography collectors typically treat these materials as prized possessions.

26. Based on the above information, your affiant believes that probable cause exists to believe that the attached listed items, which are property constituting evidence of violations of Title 18, United States Code, Sections 1470, 2251(a), 2252, 2252A, and 2422(b), or property designed or intended for use or which is or has been as the means of committing those criminal offenses which makes it a federal crime for any person to transfer obscene material to a minor, knowingly produce, receive or possess child pornography, and to entice a minor to engage in sexually explicit conduct, by the use of a cellular phone, will be found in the SUBJECT CELL PHONE.

27. Your affiant further requests judicial authority to transport/ship these items to any appropriate laboratory setting outside of the Southern District of Illinois in order to complete a full forensic examination.

28. Disclosure of the contents of this application and affidavit and the search warrant could compromise and jeopardize an ongoing investigation and witnesses who have provided information to investigating agents and possibly reveal the identity of E.M. For that reason, we request that the application and search warrant be sealed.

FURTHER AFFIANT SAYETH NAUGHT.

Andrew Leach, Special Federal Officer
Federal Bureau of Investigation

STEPHEN R. WIGGINTON
United States Attorney

ANGELA SCOTT
Assistant United States Attorney

State of Illinois        )
                         )  SS.
County of St. Clair      )

Sworn to before me, and subscribed in my presence on the 9th day of April 2012, at East St. Louis, Illinois.

DONALD G. WILKERSON
United States Magistrate Judge

12

## ATTACHMENT A

Any and digital files, including files revealing contact with minors, including contact names and telephone numbers, any and all digital images, any and all text messages, the content of any and all voice mail saved on the telephone messages, passwords needed to access the SUBJECT CELL PHONE, and any and all records showing dominion, ownership, custody or control over the SUBJECT CELL PHONE.

13